UNITED STATES BANKRUPTCY COURT
Middle District of Georgia

In re:

*Isaac L. & Sonya C. Pippen*
Debtor

Case No. 15-30523-jps

**Withdrawal of Claim**

The undersigned creditor, Westgate Palace, LLC, hereby withdraws Claim No. 13-1, filed by him with this court on 08/24/2015 in the amount of $11,712.88.

Date: January 13, 2016

Cade Taylor, Director of Portfolio Services

Cc: William Rhymer, Attorney at Law

B10 (Official Form 10) (04/13)

UNITED STATES BANKRUPTCY COURT Middle District of Georgia

**PROOF OF CLAIM**

Name of Debtor: Isaac L. & Sonya C. Pippen

Case Number: 15-30523-jps

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): Westgate Palace, LLC.

**COURT USE ONLY**

Name and address where notices should be sent:
2801 Old Winter Garden Road
Ocoee, FL 34761

Telephone number: (407) 355-1004 email: account services@wgresorts.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:** ________
(*If known*)

Filed on: ________

Name and address where payment should be sent (if different from above):

Telephone number: email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 11,712.88

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage
(See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** 0 2 9 9

**3a. Debtor may have scheduled account as:** 6015
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate ☐ Motor Vehicle ☐ Other
**Describe:** Timeshare

**Value of Property:** $ 10,800.00

**Annual Interest Rate** 17.990% ☑ Fixed or ☐ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:** $ 1,465.54

**Basis for perfection:** Mortgage

**Amount of Secured Claim:** $ 11,712.88

**Amount Unsecured:** $ 0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$________

**Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☑ I am the creditor. ☐ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Cade Taylor
Title: Director of Portfolio Services
Company: Westgate Resorts
Address and telephone number (if different from notice address above):

(Signature) 08/18/2015 (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

THIS INSTRUMENT PREPARED BY:
LEONARD LUBART, ESQ.
GREENSPOON MARDER, P.A.
100 West Cypress Creek Road, #700
Fort Lauderdale, Florida 33309

015-

# WARRANTY DEED AND LIEN ON REAL PROPERTY

**Westgate Palace**
DOCUMENTARY STAMP TAXES AND INTANGIBLE TAXES HAVE BEEN PAID PURSUANT TO FLORIDA STATUTES, 199.133(1), 201.02(1) AND 201,02(2)

Parcel Identification No. **25-23-28-9124-99-999**

THIS INDENTURE made this **16TH**day of **January, 2015**, between
**Westgate Palace, L.L.C., a Florida limited liability company**
whose post office address is 5601 Windhover Dr., Orlando, FL 32819
organized and existing under the laws of the State of Florida, hereinafter referred to as "Grantor" or "Lender" as appropriate, and
**Isaac L Pippen Jr**
**Sonya C Pippen, Husband and Wife**

**As Joint Tenants with Right of Survivorship**
whose post office address is **6145 Carrier Drive, Orlando, FL 32819** hereinafter referred to as "Grantee" or "Borrower" as appropriate.

**WITNESSETH:**

That the Grantor, in consideration of Ten ($10.00) Dollars and other good and valuable consideration to it paid by the Grantee, the receipt of which is acknowledged, has bargained and sold, and by these presents does grant, bargain, sell and convey unto the aforesaid Grantee, their heirs, devisees, successors and assigns, forever the following described property, (the "Property") situate and being in **Orange** County, Florida:

**1/2 Time Share Interest(s) All Season - Float Week / Float Unit according to the Time Sharing Plan for Westgate Palace, a Timeshare Resort, recorded in Official Records Book 7010, at Page 1467 of the Public Records of Orange County, Florida (the "Plan"). Together with the right to occupy, pursuant to the Plan, Building(s) / Unit(s) / Unit Week(s) / Assigned Year(s), 2/604 / 20 / EVEN**

**6145 Carrier Drive, Orlando, FL 32819 (herein "Property Address")**

Grantee shall not be deemed a successor or assign of Grantor's rights or obligations under the afore described Declaration or any instrument referred to therein. Grantee, by acceptance hereof, and by agreement with Grantor, hereby expressly assumes and agrees to be bound by and to comply with all of the covenants, terms, conditions and provisions set forth and contained in the Declaration, including, but not limited to, the obligation to make payment for assessments or the maintenance and operation of the Resort which may be levied against the above described Time Share Interest, and the obligation to pay the indebtedness as described below, subject to the lien granted and reserved herein.

And the Grantor does hereby fully warrant the title to said property and will defend the same against lawful claims of all persons whomsoever, subject to easements, conditions, restrictions, covenants and limitations of record and taxes for the year of the conveyance and subsequent years.

Grantee as Borrower acknowledges that, in connection with this conveyance, Grantee has executed a Promissory Note (the "Note") in the amount of **Ten Thousand Nine Hundred Sixty-Three Dollars & 54 Cents ($10,963.54)** providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **April 15, 2025.**

Grantee as Borrower does hereby further mortgage, grant and convey to Grantor as Lender, and Lender does hereby reserve unto itself, its successors and/or assigns, a lien and security interest in the Property in order to secure repayment of the Note. Notwithstanding the provisions of paragraph 19 of the Master Form of Mortgage and Riders and Addendums attached thereto, if any, recorded in Official Records Book **07457**, at Page **3237**, of the Public Records of **Orange** County, Florida (the "Master Mortgage"), if the Borrower fails to make timely payments under the obligation secured by this mortgage, or is otherwise deemed in uncured default of this mortgage, the lien against the Borrower's Timeshare Interest created by this mortgage may be foreclosed in accordance with either a judicial foreclosure procedure or a trustee foreclosure procedure and may result in the loss of Borrower's Timeshare Interest. If the Lender initiates a trustee foreclosure procedure, the Borrower shall have the option to object, and the Lender may proceed only by filing a judicial foreclosure action. Lender and Borrower hereby expressly adopt and incorporate by reference as if fully set forth herein and hereby agree to be bound by the covenants and agreements contained in the Master Mortgage. The lien and security interest granted herein may be assigned by Lender by separate assignment of the lien and security interest created hereby. Notwithstanding anything contained herein to the contrary, this instrument shall be deemed one instrument consisting of both a conveyance of real property and the granting and reservation of a lien and security interest.

Signed, Sealed and Delivered in the Presence of:

**Westgate Palace, L.L.C., a Florida limited liability company**

Print Name:

**By: Westgate Resorts, Inc., a Florida corporation, its Manager**

Print Name:

By: ______________________
Name: David A. Siegel Title: President

STATE OF FLORIDA COUNTY OF ORANGE )

The foregoing instrument before me this day of , by David A. Siegel.
He/She is personally known to me and who did/did not take an oath.

Notary Signature and Seal

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

GRANTEE/BORROWER Isaac L Pippen Jr

GRANTEE/BORROWER Sonya C Pippen

GRANTEE/BORROWER

GRANTEE/BORROWER

STATE OF FLORIDA, COUNTY OF **Orange**)

The foregoing instrument was acknowledged before me this **16TH** day of **January, 2015**, by
**Isaac L Pippen Jr and Sonya C Pippen**
He/she is personally known to me or has produced passport/driver's license as a type of identification.

LISA R. PANELLA-RUEDA
Notary Public - State of Florida
My Comm. Expires Apr 29, 2016
Commission # EE 185884
Bonded Through National Notary Assn.

Notary Signature and Seal
Expiration Date ______________

WR053A 05/12

# NOTE

6015

$ 10,963.54 Orlando, Florida

FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay **Westgate Palace L.L.C., a Florida limited liability company**, or order, the principal sum of **Ten Thousand Nine Hundred Sixty-Three Dollars & 54 Cents** Dollars (**$10,963.54**) with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of **17.99** percent per annum. Principal and interest shall be payable at 5601 Windhover Drive, Orlando, FL 32819-7905, or such other place as the Note holder may designate, in consecutive monthly installments of **Two Hundred One Dollars & 54 Cents** Dollars (**$201.54**), on the **15TH** day of each month beginning **May, 2015** Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on **April 15, 2025** ("Maturity date"). In the event the first payment date is more than thirty (30) days after the date of this Note, all interest accruing from the 31st day after the date of this Note to the first payment date shall be deemed fully earned, due and payable provided, however, the amount of such accrued interest shall be added to the principal amount due and amortized over the term of the Note without interest, which amount is included in the monthly payment set forth above.

If any monthly installment under this Note is not paid when due and remains unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty (30) days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If there is a default under this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of collection, whether or not suit is brought, including, but not limited to, reasonable attorney's fees. While in default, this Note shall bear interest at the highest rate permitted by law.

Borrower shall pay to the Note holder a late charge of Twenty Five Dollars ($25.00) if any or a portion of any monthly installment is not received by the Note holder within ten (10) days after the installment is due.

Regular installments shall be applied first to interest, then to principal and then to late fees and costs.

Borrower may prepay the principal amount outstanding in whole or in part. The Note holder may require that any partial prepayments (i) be made on the date the monthly installments are due, and (ii) be in the amount of that part of one or more monthly installments which would be applicable to principal. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing.

Presentment, notice of dishonor, and protest are hereby waived by all markers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower provided for in this Note shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be given by mailing such notice by certified mail, return receipt requested, to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

It is the parties' express intent that this Agreement and the rights, duties and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of **Florida** and, to the extent they preempt the laws of such state, the laws of the United States.

It is the express intent of the parties hereto that Lender does not intend or expect to charge or receive any amount in the nature of interest or which would be deemed or construed to be interest in excess of the maximum rate authorized by law. In the event any amount charged or received under this note is determined to be exceed the highest lawful rate, such excess is hereby waived and shall either be applied to the outstanding principal balance or refunded to the Maker to the extent such excess exceeds the remaining principal balance.

Each party hereto knowingly, voluntarily, and intentionally waives any right it may have to a trial by jury with respect to any litigation (including, but not limited to, any claims, cross-claims, counter-claims, or third party claims) arising out of, under, or in connection with this Agreement or between the parties to this Agreement, their affiliates, subsidiaries, successors, or assigns and irrespective of whether such litigation arises out of this Agreement, by statute, or as a matter of tort law, and the parties hereto expressly consent to a non-jury trial in the event of any of the foregoing.

All of the provisions set forth in this Note are a material inducement for Lender's entering into the transaction with Borrower.

The indebtedness evidenced by this Note is secured by a **Mortgage** , dated **January 16, 2015** and reference is made to the **Mortgage** for rights as to acceleration of this indebtedness evidenced by this Note.

**934 HARVEST LANE**
**MONROE, GA 30655**
**USA**

[signature] (SEAL)
Isaac L Pippen Jr

[signature] (SEAL)
Sonya C Pippen

_______________ (SEAL)

_______________ (SEAL)

Address
**UNIT(S) AND UNIT WEEK(S)**
2 604/20 E

# CONTRACT FOR PURCHASE AND SALE

WESTGATE PALACE, A Time Share Resort
6145 Carrier Drive
Orlando, Florida 32819

SELLER/DEVELOPER
WESTGATE PALACE, L.L.C.
2801 Old Winter Garden Road
Ocoee, Florida 34761

0299, . 6814

Purchaser: Isaac L Pippen Jr
Sonya C Pippen, Husband and Wife

As Joint Tenants with Right of Survivorship

Address: 934 HARVEST LANE
MONROE, GA 30655 USA

Home Telephone: 7702674980

Business Telephone: 7708628965

Purchaser (s) agree (s) to purchase and Seller agrees to sell to Purchaser one (1) or more timeshare interests in the Time Share Accommodations known as WESTGATE PALACE, a TimeShare Resort, 6145 Carrier Drive, Orlando, Florida 32819, pursuant to t he terms and conditions of this Contract for Purchase and Sale and the TimeSharing Plan, a copy of which is included with the Public Offering Statement that each Purchaser receives upon execution of a contract for Purchase and Sale, together with all improvements, easements, rights, privileges and appurtenances pertaining to said TimeShare Interest as set forth in the Time Sharing Plan and all Exhibits thereto:

2 - BEDROOM DELUXE

Number of Time Share Interests Purchased: 1/2
Assigned Unit(s) / Unit Week(s) / Year(s):
2-604 / 20 / EVEN

Fixed or Floating: All Season - Float Week / Float Unit
First Available Occupancy Date: 2016

Estimated Ad Valorem Tax Assessments: Even Years $ 69.00 Odd Years $ 0.00
Estimated Maintenance Assessments: Even Years $ 720.00 Odd Years $ 0.00

| | |
|---|---|
| 1. Purchase Price | $ 10,800.00 |
| 2. Closing Charges | $ 375.00 |
| 3. Exchange Membership Dues (In the event Purchaser elects to become a member of the exchange program) | $ 89.00 |
| 4. Debt Waiver For Loss of Life* Isaac L Pippen Jr Sonya C Pippen | $ 1,263.54 |
| 5. Debt Waiver For Involuntary Unemployment* Isaac L Pippen Jr | $ N/A |
| 6. Total (1+2+3+4+5) | $ 12,527.54 |
| 7. Deposit Made this Date | $ 300.00 |
| 8. Additional Deposit Due 02/16/2015 / $421.00 03/15/2015 / $421.00 04/15/2015 / $422.00 | $ 1,264.00 |
| 9. Total Down Payment (7+8) | $ 1,564.00 |
| 10. Amount Financed (6 minus 9 ) | $ 10,963.54 |

* *Additional information regarding credit life insurance and involuntary unemployment insurance is available upon request.*

THIS AGREEMENT is subject to the terms and conditions set forth on the reverse side hereof which by reference is made a part hereof.

THE DEVELOPER HAS LIMITED YOUR RESALE RIGHTS. ANY FUTURE PURCHASER (OTHER THAN A TRANSFER AS THE RESULT OF DEATH, DIVORCE OR TO AN IMMEDIATE FAMILY MEMBER) WHO BUYS YOUR TIMESHARE INTEREST FROM YOU WILL HAVE SEVERELY LIMITED OPPORTUNITY TO RESERVE OCCUPANCY IN THIS TIMESHARE PLAN.

FOR THE PURPOSE OF AD VALOREM ASSESSMENTS, TAXATION AND SPECIAL ASSESSMENTS, THE MANAGING ENTITY WILL BE CONSIDERED THE TAXPAYER AS YOUR AGENT PURSUANT TO SECTION 192.037, FLORIDA STATUTES.

YOU MAY CANCEL THIS CONTRACT WITHOUT ANY PENALTY OR OBLIGATION WITHIN TEN (10) CALENDAR DAYS AFTER THE DATE YOU SIGN THIS CONTRACT OR THE DATE ON WHICH YOU RECEIVE THE LAST OF ALL DOCUMENTS REQUIRED TO BE GIVEN TO YOU PURSUANT TO SECTION 721.07(6), FLORIDA STATUTES, WHICHEVER IS LATER.

IF YOU DECIDE TO CANCEL THIS CONTRACT, YOU MUST NOTIFY* THE DEVELOPER IN WRITING OF YOUR INTENT TO CANCEL. YOUR NOTICE OF CANCELLATION SHALL BE EFFECTIVE UPON THE DATE SENT AND SHALL BE SENT TO WESTGATE PALACE, L.L.C., 2801 OLD WINTER GARDEN ROAD, OCOEE, FLORIDA 34761. ANY ATTEMPT TO OBTAIN A WAIVER OF YOUR CANCELLATION RIGHTS IS VOID AND OF NO EFFECT. WHILE YOU MAY EXECUTE ALL CLOSING DOCUMENTS IN ADVANCE, THE CLOSING, AS EVIDENCED BY DELIVERY OF THE DEED OR OTHER DOCUMENT, BEFORE EXPIRATION OF YOUR TEN (10) DAY CANCELLATION PERIOD, IS PROHIBITED.

DATE OF EXECUTION

(As to Purchaser) January 16, 2015
(As to Developer) January 16, 2015

Signature of Purchaser
Isaac L Pippen Jr

Signature of Purchaser
Sonya C Pippen

Signature of Purchaser

Signature of Purchaser

Signature on Behalf of Seller

5015
PIERRE F POINTDUJOUR 130448
PRINCE JOHNSON 26695
KUMMARY PERSAUD 16212
4:41 PM
Internet Access Code: 0678f7c3

*"Notify", for purposes of Sections 721.06(1)(g) and 721.065(2)(c), Florida Statues, shall mean that a written notice of cancellation is delivered by any means which may include certified mail return receipt requested, to the entity designated to receive the notice of cancellation in the statement required by Sections 721.065(2)(c), Florida Statues.

WP006A 7/14

1. Description of Timesharing Plan: Purchaser acknowledges [illegible] Timesharing Plan, which [illegible] conveyance of [illegible] property in perpetuity. The Timesharing Plan is for a term of thirty (30) years with a provision for ten (10) year renewals. The Developer has recorded or will record amongst the Public Records of Orange County, Florida, a Declaration of Covenants, Conditions and Restrictions (the Timesharing Plan) setting forth the rights, obligations, benefits and burdens of each Owner with respect to the Timeshare Accommodations and Facilities (Common Amenities). The Timesharing Plan contains various definitions, which definitions are incorporated herein by reference.

Pursuant to the Timesharing Plan, the Developer shall convey to each Purchaser the ownership in fee simple of an undivided interest as a tenant in common with the other Owners in a particular building in the Resort Facility, one Timeshare interest being a fraction, the numerator of which is one (1) and the denominator of which is the number of Units in the building multiplied by fifty-two (52), which interest shall constitute said Owner's Timeshare Interest. The Timeshare Interest conveyed shall be limited to an undivided interest only in the building in which the Assigned Unit and Assigned Unit Week is located. Each Timeshare Interest equals an undivided interest as set forth in the Plan. A Biennial Timeshare interest equals an undivided interest as set forth in the Plan. An Owner can be the Owner of more than one (1) Timeshare Interest. The conveyance by the Developer of a Timeshare Interest to an Owner shall designate to such Owner the use of an Assigned Unit and an Assigned Unit Week. The Owner shall be entitled to the possession of the Assigned Unit only during the Assigned Unit Week.

There shall be certain Facilities available for use by Owners in connection with ownership in the Timeshare Accommodations. The Developer may, however is not obligated to, add additional properties and improvements to the Facilities in its sole discretion, without the consent of the Association or any Owner.

2. Completion of Construction of Accommodations and Facilities: The construction, finishing and equipping of the accommodations and facilities is complete.

3. Total Financial Obligation of Purchaser: Each Purchaser shall be obligated to pay the purchase price indicated on the face of the Contract for Purchase and Sale and the finance charge as indicated thereon (in the event the purchase price is financed in whole or in part) and, in addition thereto, shall be obligated to pay maintenance fees as set forth in paragraph "6" of this Agreement, closing costs as described in paragraph "7" of this Agreement, exchange membership dues set forth on the face of this Agreement, in the event the purchaser elects to become a member of the exchange program in the event Purchaser desires to purchase same. The Purchaser shall not be obligated to pay any other charges except recurring maintenance expenses as set forth in the Timesharing Plan and property tax assessments as assessed by appropriate local governmental authorities. Purchaser acknowledges that the Warranty Deed and purchase money Note and Mortgage, if any, executed in connection herewith are being held in escrow and shall not be deemed operative or delivered until such time as the transaction closes as set forth in paragraph 8 below. The obligation to pay as set forth in the Note and Mortgage shall not be created until the closing. However, pending the closing of this transaction, Purchaser shall be contractually required hereunder to make the payments set forth in the Note as additional deposits under this Contract, which payments, along with the initial deposits and all other additional deposits, shall be subject to the provisions of Section 721.08, Florida Statutes. If, as and when the transaction closes, such additional deposits will be credited against payments due under the Note.

4. Cancellation of Contract: In the event the Purchaser cancels the Contract during a ten (10) day cancellation period, the Developer will refund to the Purchaser the total amount of all payments made by the Purchaser under the Contract, reduced by the proportion of any Contract Benefits the Purchaser has actually received under the Contract prior to the effective date of the cancellation. CONTRACT BENEFITS SHALL INCLUDE, BUT NOT BE LIMITED TO, THE OWNER'S KIT (EXCLUDING THE PUBLIC OFFERING STATEMENT) DELIVERED TO PURCHASER AT POINT OF SALE. FIFTY ($50.00) DOLLARS SHALL BE DEDUCTED FROM THE REFUND FOR EACH OWNER'S KIT THAT IS NOT RETURNED UPON CANCELLATION. OCCUPANCY PRIOR TO RESCISSION FOR WHICH NO SEPARATE PAYMENT IS MADE IS A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF $200.00 PER NIGHT. ANY MEALS PROVIDED TO PURCHASER AFTER EXECUTION OF A CONTRACT SHALL BE A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF $15.00 FOR ADULTS AND $8.00 FOR CHILDREN (11 YEARS OF AGE AND YOUNGER) PER MEAL, AND ANY ATTRACTION TICKETS PROVIDED TO PURCHASER AFTER EXECUTION OF A CONTRACT SHALL BE A CONTRACT BENEFIT WITH AN AGREED UPON VALUE OF THE RETAIL VALUE OF THE TICKET. The refund shall be made within twenty (20) days of demand therefor by Purchaser, or within five (5) days after receipt of funds from the Purchaser's cleared check, whichever is later.

5. Ownership of Accommodations and Facilities: The Developer is the Owner in fee simple absolute of the Accommodations of the Timesharing Plan. The Accommodations and Facilities will not be subject to any liens or encumbrances, except those set forth in the owner's policy of title insurance to be delivered to each Purchaser.

6. Maintenance Fees: Purchaser acknowledges that, in addition to the purchase price and closing charges, Purchaser will be responsible, in accordance with the Timesharing Plan, for the payment of a pro rata share of the Common Expenses, assessments, maintenance fees and other expenses incurred in the operation of the Timeshare Accommodations and Common Facilities. The current maintenance assessment for each timeshare interest purchased, shall be as set forth on the first page of this Agreement exclusive of real estate taxes which are to be separately assessed.

7. Closing Costs and Expenses of Sale: Purchaser acknowledges that in addition to the purchase price of each timeshare interest, Purchaser must pay certain other "Closing Charges" when (t)he(y) accept ownership at closing of title. Purchaser shall be obligated to pay to Seller, in addition to the purchase price, all Closing Charges in the amount set forth on the face of this Agreement, which Closing Charges include, but are not limited to, the payment of documentary stamps on the Warranty Deed, title insurance fees, recording charges, intangible and documentary stamps on any Note and Mortgage executed in connection with this transaction, credit investigation report, Developer's administrative closing and processing fee and Developer's attorneys' fees. Purchaser acknowledges that such Closing Charges are not to be considered part of the purchase price. Purchaser acknowledges that the Closing Charges are the same regardless of whether the transaction is financed or whether the Purchaser initially elected to obtain financing and converted to an all cash deal while the transaction remains in escrow. Seller shall be responsible for the payment of any documentary stamps or intangible tax that may be due on the transaction. In the event a Note and Mortgage are executed and the Purchaser elects to convert the transaction to an all cash transaction by paying the purchase price in full while the Note and Mortgage are in escrow, the parties agree that the Note and Mortgage shall be of no force and effect and shall be deemed to have never been delivered. Unless this transaction is cancelled in accordance with paragraph 4 above, there shall be no refund of any portion of the Closing Charges. Notwithstanding anything contained herein to the contrary, the Seller makes no representations whatsoever that any portion of the Closing Charges to be collected from the Purchaser represent state funds that shall be utilized to pay taxes. In this regard, it is understood and agreed that Seller shall pay only state documentary stamp taxes and intangible taxes which are required to be due and payable at the time a Contract for Purchase and Sale is closed which documentary stamp and intangible taxes shall be calculated as required by law based upon those documents which are actually submitted for recording. If the Purchaser defaults, any Closing Charges previously paid shall not be utilized to pay any documentary stamp and intangible taxes and instead shall be deemed part of additional deposits paid by Purchaser and shall be retained by Seller as liquidated damages.

8. Estimated Date of Closing; Occupancy Prior to Closing: The term "closing" shall have that meaning as set forth in Florida Statutes, Chapter 721.05(5). The estimated date of closing of this transaction shall be subsequent to the payment by Purchaser of the total down payment in the amount set forth on the face of this Agreement, and clearance of all funds. The exact date of closing shall be as determined by Developer but shall be no later than twenty four (24) months from the date of execution of this Agreement. In addition, Seller is obligated to complete construction of the building in which the Timeshare Interest is located within twenty-four (24) months from the date of this Agreement. However, the completion date is subject to and may be extended by Seller by reason of circumstances beyond Seller's control, including, but not limited to, work stoppages, the unavailability of labor or materials, the unavailability of mortgage financing, governmental orders, other events which support a defense based upon impossibility of performance for reasons beyond Seller's control, or acts of God. If prior to closing, Purchaser is making payments on a Purchase Money Mortgage into Escrow, then closing may in the Developer's sole discretion be conditioned upon Purchaser having made prior to the date of closing, twelve timely monthly mortgage payments and being current in all mortgage payments prior to the date of closing. Upon execution of this Contract for Purchase and Sale, Seller and Purchaser intend to execute all documents necessary for closing, including a Warranty Deed, Promissory Note, Mortgage and other loan closing documents in the event this transaction is to be financed in whole or in part. Such closing documents are to be held in escrow by Seller or an escrow agent designated by Seller, pending closing. The Developer may, at its sole option, allow the Purchaser to occupy a Timeshare Unit after the rescission period has expired but prior to closing. In such event, the Developer may require the Purchaser to pay the then current maintenance fee for the Timeshare Unit occupied by Purchaser, in lieu of rent. This payment is outside of escrow as it is in return for occupancy of a Unit. Accordingly, any fees paid hereunder will not be refunded in the event of cancellation by Purchaser.

9. Condition of Title: Seller shall convey title to Purchaser by Warranty Deed and shall record same in the Public Records of Orange County, Florida. The Warranty Deed shall designate a Unit which the Purchaser shall occupy and a Unit Week during which the Purchaser shall occupy his Unit. Seller shall provide Purchaser with insurable title, and Seller agrees to provide Purchaser, within one hundred eighty (180) days after closing, with an owner's policy of title insurance issued by a title insurance company licensed in Florida. The title insurance policy will be issued at no expense to Purchaser beyond the closing costs required pursuant to paragraph 7 hereof. This policy will contain details of any limitations on Purchaser's title. Permitted limitations are liability for all taxes starting the year Purchaser acquires title; any restrictions, covenants, limitations, reservations or easements of record; any restrictions, covenants, terms and other provisions of the Timesharing Plan, and all Exhibits thereto, as may be amended; any Mortgage or other loan documents executed by Purchaser; and the general exceptions contained in the standard A.L.T.A. owner's policy of title insurance. Further, the title policy issued to Purchaser shall specifically exclude coverage for any event whatsoever occurring with respect to the Timesharing Plan, or any interest therein, caused by virtue of any preemption of State law, including, but not limited to, any of the provisions of Florida Statutes, Chapters 721, or any of the terms and provisions of Chapter 11, United States Code. In the event Seller is unable to provide title as provided for herein, Purchaser shall have the option of accepting title in its existing condition and of payment of the full purchase price whereupon no further claims may be made upon Seller, or, Purchaser may cancel this Contract for Purchase and Sale and receive a full refund of all deposits paid in complete satisfaction of all claims against Seller.

10. Loan Financing: Purchaser acknowledges that Seller may provide mortgage financing upon such terms, conditions and limitations as may be determined in Seller's sole discretion. If Purchaser desires financing, a loan application will be completed and submitted in connection with this Contract for Purchase and Sale, together with the execution of all mortgage loan closing documents, and said loan application shall be subject and conditioned upon Seller's approval for credit worthiness.

11. Construction and Furnishing Specifications: Materials, equipment, fixtures, furniture and furnishings to be used in a Unit will be substantially similar to those described in Seller's plans and specifications maintained by Developer and to the Model Unit(s) made available by Seller for viewing by Purchaser. In this regard, Purchaser acknowledges that such Model(s) are for display purposes only and that Purchaser's Assigned Unit shall have the furniture, appliances, equipment substantially similar to, or of equal quality to, those shown or used in the Model(s). To this extent, Seller warrants and represents that Purchaser's Unit will contain furnishings and furniture substantially similar to that contained in any Model Unit exhibited to Purchaser.

12. Seller's Use of the Property: For such period of time as Seller owns any timeshare interest, Seller and its agents may keep offices and Model Units in the property. Seller's salesmen, agents and representatives may exhibit these Units, erect advertising signs and do whatever else that may be necessary and helpful for sales or rentals. Seller may sell timeshare interests or lease or rent Units or Unit Weeks on a temporary or transient basis.

13. Purchaser's Default: In the event that Purchaser fails to comply with any of the terms, conditions and provisions of this Contract for Purchase and Sale, including the failure to execute all closing documents as may be reasonably required of Purchaser or to pay the balance of the purchase price due (a "Default"), Purchaser shall be in default, and Seller shall have the right to declare this Contract for Purchase and Sale cancelled. Upon Default, Seller may retain any deposits made by Purchaser and enforce any Promissory Note that may have been executed by Purchaser in connection with any additional deposits due hereunder as full and complete liquidated damages. For purposes of this paragraph, the term "deposit" shall mean the initial downpayment made by a Purchaser, any additional deposits due in accordance with the terms of this Contract and any payments made into escrow pursuant to the Purchase Money Promissory Note, if any, executed in connection herewith. Notwithstanding the foregoing application of payments under the Purchase Money Promissory Note upon Default, once the closing occurs, all payments made pursuant to the Purchase Money Promissory Note shall be applied in accordance with its terms. Seller may then resell the timeshare interest without any accounting to Purchaser. Upon default of a Purchaser, Escrow Agent shall be authorized to release to Seller any and all documents previously executed by Purchaser and delivered by Seller and all monies held in escrow.

14. Seller's Default: In the event Seller defaults in any of its promises or fails to perform any of its duties under this Contract for Purchase and Sale, then Purchaser shall give Seller written notice of such default, and, if within ten (10) days from receipt of such notice, Seller fails to commence action that would cure the default within a reasonable period of time, Purchaser shall have all remedies permitted by law, including, but not limited to, the right of specific performance.

15. Attorney's Fees: In the event of any litigation arising out of this Contract, the prevailing party will be entitled to recover its reasonable attorney's fees, including paralegal fees, and all costs and fees on appeal.

16. Notices: Any time Purchaser and Seller are required to notify each other, the notice must be in writing. All notices, other than a notice of cancellation, must be sent by registered or certified mail, postage prepaid, with a return receipt requested. All notices will be sent to the addresses listed on the face of this Contract for Purchase and Sale. Either party may change their addresses for notices by notifying the other in writing. A change of address notice is effective when received. All other notices are effective on the date mailed.

17. Transfer or Assignment: Purchaser shall not assign, sell or transfer its interest in this Contract for Purchase and Sale without receiving Seller's prior written consent. Following closing of title and the recording of a Warranty Deed in favor of Purchaser, Purchaser's right to transfer a Unit Week shall be made pursuant to the Declaration of Covenants, Conditions and Restrictions. Seller can assign or transfer its interest in this Contract for Purchase and Sale and Purchaser's consent will not be required.

18. Purchaser's Acknowledgements: Purchaser acknowledges that Purchaser has received a copy of the Public Offering Statement, together with all Exhibits attached thereto. Seller reserves the right to make changes in any of such documents as described in the Public Offering Statement, as Seller, governmental authorities having jurisdiction over the Timeshare Accommodations, or mortgage lenders require or deem necessary, provided such changes do not materially and adversely affect Purchaser's right to the use and enjoyment of the Timeshare Accommodations. Seller hereby discloses that no representations have been made to the purchaser as to the potential future profit, rental potential, tax advantages, depreciation or other investment potential or other monetary or financial advantage.

19. Notice Regarding Title Insurance: The Developer shall provide each Purchaser with a title insurance policy issued by a title insurance company licensed in the State of Florida. In the event a Purchaser wishes to receive a title insurance policy from a company other than as specified by Developer, Purchaser may do so upon providing Developer with notice of Purchaser's election within fifteen (15) days of the date hereof. Upon making such election, Purchaser will be reimbursed for the cost of such title policy in the amount of the minimum promulgated rate adopted pursuant to the rules of the Insurance Commissioner of the State of Florida. In the event no such election is made by Purchaser, such failure to elect shall be deemed an absolute waiver thereof.

20. Broker Participation: Seller hereby advises Purchaser that WESTGATE MARKETING, LLC or other broker designated by Seller ("Broker") is acting as exclusive sales agent for Developer. All commissions payable to said agent shall be paid for by Developer.

21. Entire Agreement: This Contract for Purchase and Sale contains the entire agreement and contract for the sale and purchase of the timeshare interest as described herein and, following execution, it can only be amended by another agreement in writing.

22. Warranties: TO THE EXTENT LAWFUL, ALL IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY AND HABITABILITY, AND ALL WARRANTIES IMPOSED BY FEDERAL OR STATE STATUTES, ARE SPECIFICALLY DISCLAIMED.

23. Choice of Law; Jurisdiction; Venue; and Waiver of Jury Trial:

a. It is the parties' express intent that this Agreement and the rights, duties and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Florida (excluding application of its conflict of laws principles) and, to the extent they preempt the laws of such state, the laws of the United States.

b. Purchaser (a) hereby irrevocably submits itself to the process, jurisdiction and venue of the courts of the State of Florida, Orange County, and to the process, jurisdiction and venue of the United States District Court for the Middle District of Florida, for the purposes of suit, action or other proceedings arising out of or relating to this Agreement or the subject matter hereof, or, if Seller initiates such action, any court in which Seller shall initiate such action and the choice of such venue shall in all instances be at Seller's election, and (b) without limiting the generality of the foregoing, hereby waives and agrees not to assert by way of motion, defense or otherwise in any such suit, action or proceeding any claim that Purchaser is not personally subject to the jurisdiction of the above-named courts, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. Purchaser hereby waives the right to collaterally attack any judgment or action in any other forum.

c. Purchaser and Seller acknowledge and agree that any controversy which may arise under any of the documents would be based upon difficult and complex issues and, therefore, the parties agree that any lawsuit arising out of any such controversy shall be tried by a judge sitting without a jury, and Purchaser hereby knowingly and voluntarily waives trial by jury in any such proceeding.

d. All of the provisions set forth in this paragraph are a material inducement for Seller's entering into the transaction with Purchaser.

24. Escrow Agreement: Developer has entered into an Escrow Agreement with GREENSPOON, MARDER, HIRSCHFELD, RAFKIN, ROSS & BERGER, P.A., 100 West Cypress Creek Road, Trade Centre South, Suite 700, Fort Lauderdale, Florida 33309, (Escrow Agent). Escrow Agent shall hold all deposits made by Purchasers, in escrow, in accordance with said Escrow Agreement.

Notwithstanding anything contained herein to the contrary, all funds received from Purchaser and held in escrow pursuant to the provisions of Florida Statutes, Chapter 721.08 shall be disbursed to Seller only in accordance with Florida Statutes, Chapter 721.08 and the Escrow Agreement entered into between Seller and Escrow Agent. A copy of the Escrow Agreement is attached as an Exhibit to the Public Offering Statement delivered to Purchaser. Any interest earned on any deposits made by Purchaser, and held in escrow, shall inure to the exclusive benefit of Seller.

Notwithstanding the foregoing escrow provisions, Purchaser does hereby agree that in lieu of any escrows required by this Contract, the Escrow Agreement or Florida Statutes Chapter 721.08(1), Developer may establish alternative assurances acceptable to the Director of the Division of Florida Land Sales and Condominiums in accordance with Florida Statutes Chapter 721.08(2).

25. Radon Gas: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

26. RESALES. ANY RESALE OF THIS TIMESHARE INTEREST MUST BE ACCOMPANIED BY CERTAIN DISCLOSURES IN ACCORDANCE WITH SECTION 721.065, FLORIDA STATUTES.

27. Limited Power of Attorney. Purchaser hereby grants to Seller a limited power of attorney for the purpose of correcting errors in documents and legal descriptions, to conform vesting on the deed and mortgage, and to otherwise make corrections to documents that do not materially affect the Purchaser's rights or title to the Timeshare Interest being acquired hereby.

28. Construction Defects Disclosure. FLORIDA LAW CONTAINS IMPORTANT REQUIREMENTS YOU MUST FOLLOW BEFORE YOU MAY FILE A LAWSUIT FOR DEFECTIVE CONSTRUCTION AGAINST A CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL FOR AN ALLEGED CONSTRUCTION DEFECT IN YOUR HOME. SIXTY DAYS BEFORE YOU FILE YOUR LAWSUIT, YOU MUST DELIVER TO THE CONTRACTOR, SUBCONTRACTOR, SUPPLIER, OR DESIGN PROFESSIONAL A WRITTEN NOTICE OF ANY CONSTRUCTION CONDITIONS YOU ALLEGE ARE DEFECTIVE AND PROVIDE YOUR CONTRACTOR AND ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS THE OPPORTUNITY TO INSPECT THE ALLEGED CONSTRUCTION DEFECTS AND MAKE AN OFFER TO REPAIR OR PAY FOR THE ALLEGED CONSTRUCTION DEFECTS. YOU ARE NOT OBLIGATED TO ACCEPT ANY OFFER MADE BY THE CONTRACTOR OR ANY SUBCONTRACTORS, SUPPLIERS, OR DESIGN PROFESSIONALS. THERE ARE STRICT DEADLINES AND PROCEDURES UNDER FLORIDA LAW.

mrpayoff.rdf Central Florida Investments, Inc. 08/18/2015

Payoff Date : 20-MAY-15 Acct No : ‚015

| | | |
|---|---|---|
| Balance Due : | $ | 11,763.54 |
| Unused Mort Prot Ins : | $ | 1,198.68 |
| Unused Individual Unemployment Ins : | $ | 0.00 |
| Interest Due : | $ | 684.02 |
| Payment Late : | $ | 75.00 |
| Bank Charge : | $ | 0.00 |
| C and E : | $ | 464.00 |
| Total Mortgage Payoff : | $ | 11,787.88 |

! Maint. Taxes & Use Fees : !

mr_payment_history Date: 08/18/2015 11:10

Central Florida Investments
MRPAYHIST Payment History for Contract # 015 Page: 1

| Cust Id | Name | Loc | Ph | T | Bldg | Unit | Wk |
|---|---|---|---|---|---|---|---|
| | PIPPEN JR ISAAC L<br>PIPPEN SONYA C | 15 | 1 | E | 2 | 604 | 20 |

Address

C/O WILLIAM RHYMER,
ATTORNEY AT LAW
RHYMNER LAW FIRM
P.O. BOX 81028
CONYERS, GA 30013
USA
7709188000

| Dates | | Financial | |
|---|---|---|---|
| WRITTN: | 01/16/2015 | PP: | 10800.00 |
| ORGNXT: | 05/15/2015 | DP: | 1100.00 |
| NXTBIL: | 09/15/2015 | MP: | 1263.54 J |
| OCC-YR: | 2016 | IUI: | 0.00 |
| P-MADE: | 0/120 | AF: | 10963.54 |
| NXTDUE: | 05/15/2015 | IR: | 17.99 |
| | | PA: | 201.54 |
| | | CL: | 375.00 |

BD: 11763.54
EQ: -499.98
Contr-Origin: New Contract
Bank-Code: C CFI
Status/Detail: Open-Bkrupt
Status/Date: O 01/16/2015
Detail/date: B 06/08/2015
Type/Date: P 01/16/2015
Deed/Date: E 01/16/2015
In Escrow: Batch#
Owner Type: All Season

| Doc # | Due Dt | Dt Paid | Total Am | Amt/ Prin | Interest | M | Pymt-ID | Mod DateT |
|---|---|---|---|---|---|---|---|---|
| DP0001 | 01/16/15 | 01/16/15 | 300.00 | 300.00 | 0.00 | V | | 01/17/15C |

mr_payment_history Date: 08/18/2015 11:10

Central Florida Investments
MRPAYHIST Payment History for Contract # ;015 Page: 2

## S U M M A R Y OF P A Y M E N T S

| Description | Amt/ Princ | Interest | Total |
|---|---|---|---|
| Down Payment | 300.00 | 0.00 | 300.00 |
| Payment Summary Totals: | 300.00 | 0.00 | 300.00 |

## S U M M A R Y OF O P E N I T E M S

| Doc # | Due Date | Tot Amoun | Amt/Princ | Interest | Days Due |
|---|---|---|---|---|---|
| DP002 | 02/27/2015 | 421.00 | 421.00 | 0.00 | 172 |
| DP003 | 03/15/2015 | 379.00 | 379.00 | 0.00 | 156 |
| C0004 | 03/15/2015 | 42.00 | 42.00 | 0.00 | 156 |
| C0005 | 04/15/2015 | 333.00 | 333.00 | 0.00 | 125 |
| E0006 | 04/15/2015 | 89.00 | 89.00 | 0.00 | 125 |
| P00004 | 05/15/2015 | 201.54 | 33.12 | 168.42 | 95 |
| PL0007 | 05/25/2015 | 25.00 | 25.00 | 0.00 | 85 |
| P00005 | 06/15/2015 | 201.54 | 33.61 | 167.93 | 64 |
| PL0008 | 06/25/2015 | 25.00 | 25.00 | 0.00 | 54 |
| P00006 | 07/15/2015 | 201.54 | 34.12 | 167.42 | 34 |
| PL0009 | 07/25/2015 | 25.00 | 25.00 | 0.00 | 24 |
| P00007 | 08/15/2015 | 201.54 | 34.63 | 166.91 | 3 |
| | Total Due: | 2,145.16 | | | |